## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CYRIL L. PAYNE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | **Civil Action No. 03-01438 (RCL)** |
| **v.** ) | |
| ) | |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner,** ) | |
| **Social Security Administration,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### MEMORANDUM OPINION

This matter comes before the Court on defendant's motion for judgment of affirmance

[10] of the Commissioner's denial of benefits, plaintiff's opposition and defendant's reply

thereto. Upon consideration of the parties' submissions, the administrative record, and the entire

record herein, defendant's motion will be GRANTED.

**I.      Procedural Posture and Administrative Record**

On August 2, 1996, plaintiff filed an application for disability insurance benefits in which

he claimed to have become disabled and unable to work on July 21, 1996. (Administrative

Record "AR" at 84.) Plaintiff further claimed that he remained disabled at the time in which he

filed his application. (Id.) On the same date, plaintiff filed a "Disability Report" in which he

claimed that his "severe lower back pain...prevents any sitting or standing for over a period of 15

minutes" and as such, prevented him from working. (Id. at 155.) On September 18, 1997, the

Social Security Administration ("SSA"), Office of Disability and International Operations

notified plaintiff that his application for Social Security disability benefits was denied. (<u>Id.</u> at 32.)
On October 6, 1997, plaintiff notified defendant of his request for a reconsideration of this
decision. (<u>Id.</u> at 35.)  In his request for reconsideration, plaintiff identified "chronic back pain
deterioration" as his reason for requesting a reconsideration, while also asserting that he has
"persistent muscle back spasms, limitations in bending, sitting and standing for long
periods...spinal disk deterioration." (<u>Id.</u> at 38.)  After an independent reconsideration, plaintiff
was notified on April 12, 1998 that his initial denial of Social Security benefits was affirmed and
that he does "not meet the disability requirements of the law." (<u>Id.</u> at 40-41.)  The letter also
noted that upon reconsideration, the SSA found that plaintiff's "remaining physical capacities are
consistent with the physical demands of several jobs that [plaintiff has] held in the relevant past
such as car salesman and driver." (<u>Id.</u> at 41.)

Plaintiff again disagreed with the decision of the SSA and in a letter dated May 7, 1998,
Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (<u>Id.</u> at 43.)  Because
plaintiff resides in Panama, he also waived his right to appear at this hearing, and requested that a
decision be rendered on the evidence. (<u>Id.</u> at 46, 24.)  At the hearing, Judge Jan K. Michalski
implemented the five-step sequential process as set for at 20 C.F.R. § 404.1520 in determining
whether plaintiff was disabled and thereby eligible for Social Security disability benefits.  (<u>Id.</u> at
25.)  In making the determination, the ALJ relied upon the diagnosis of Dr. Alfredo DuBois,
M.D., who conducted a consultative orthopaedic evaluation of plaintiff on June 9, 1997. (<u>Id.</u>)  Dr.
DuBois diagnosed plaintiff with, among other things, "low back pain and limited back motion
related to L4-L5 bulging disc, L5-S1 HNP, and L4-L5 and L5-S1 degenerative joint disease; left
ankle pain...." (<u>Id.</u> at 26.)  Dr. DuBois also concluded that plaintiff "could sit for 6 hours out of

an 8 hour work day, and he could walk for 1 hour at a time and a total of 3 hours in work day, and he could stand for 2 hours at a time and a total of 4 hours out of an 8 hour work day..." (Id. at 26.)  The ALJ then determined that plaintiff "did not have significant limitations in his ability to do basic work related activities such as light lifting and carrying, as well as moving his head and neck in jobs with the option to sit or stand to suit his comfort, on July 21, 1996, and through the date of the decision." (Id. at 27.)  Accordingly, on August 3, 1998, the ALJ then found that plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time from July 21, 1996 to the date of this decision...[and] is not entitled to a period of disability or disability insurance under Sections 216(i) and 223, respectively, of the Social Security Act." (Id. at 31.)

On September 28, 1998, plaintiff requested an appeal and review of the ALJ's decision. (Id. at 49.)  Upon consideration of the appeal, the SSA, Office of Hearings and Appeals remanded the case back to the ALJ to "mark and number the evidence as exhibits," as well as to "consider [plaintiff's] other jobs, in addition to the job of truck driver, in determining he can perform past relevant work...[in addition to further evaluating plaintiff's subjective complaints and [providing] rationale reflecting that the factors in 20 C.F.R. 404.1529 were addressed." (Id. at 69.)

On remand to the ALJ, plaintiff again waived his right to appear and testify, and requested that a decision be made on the evidence in the record. (Id. at 11.)  Furthermore, plaintiff chose to proceed with a hearing without a representative. (Id.)  Utilizing the same five-step process, the ALJ relied upon medical records from the Department of Veterans Affairs for the time period of October 1969 through August 8, 1996 - the time in which plaintiff served in the military.  (Id. at 13.)  In these records, the ALJ noted that on July 19, 1996, plaintiff had

complained of low back pain for thirteen years.  The ALJ also again relied upon the diagnosis

from Dr. DuBois, who noted that plaintiff would "have minimal symptoms providing he is not

involved in strenuous activities involving the back and left ankle." (Id.)

The ALJ then reviewed the diagnosis of Dr. Jaime A. Jaspe C., an orthopedics and

traumatology surgeon, who noted that plaintiff had "chronic back pain for over 9 years and [an]

X-Ray performed in December of 1997 showed arthosis sign [sic]." (Id. at 14.)  Dr. Jaspe C.

noted that periods of long driving will produce more pain and more disability for plaintiff. (Id.)

The ALJ then analyzed plaintiff's allegations of pain and other subjective symptoms in

finding them not entirely credible. (Id.)  In making this determination, the ALJ relied on the

findings of Dr. DuBois who suggested "that claimant does not experience debilitating pain when

performing less strenuous activities as reflected in the established residual functional capacity."

(Id. at 15.)  The ALJ further noted that "[t]he validity of Dr. DuBois report is supported by the

findings of the Disability Determination Services' medical consultant who reviewed the evidence

and found that claimant retains the residual functional capacity of light level work." (Id.)  In

concluding, the ALJ determined that plaintiff retained the residual functional capacity to perform

the "actual functional demands and job duties of his past relevant security guard job, as it is

ordinarily performed in the national economy, and as the [plaintiff] actually performed that job."

(Id. at 16.)  As a result, the ALJ therefore determined on October 24, 2001 that plaintiff is not

disabled within the meaning of the Social Security Act. (Id. at 16.)

On May 1, 2003, the SSA denied plaintiff's request for an appeal of the ALJ's decision.

Dissatisfied with this result, plaintiff filed this instant suit on June 30, 2003.

**II. Analysis**

4

**1. Applicable Law**

The Social Security Act provides for judicial review of any final decision of the Commissioner of the Social Security Administration after a hearing to which she was a party.  42 U.S.C. § 405(g).  However, the court is to give deference to the Commissioner's findings: if they are supported by substantial evidence, they are to be treated as conclusive.  Id.  The Supreme Court has defined "substantial evidence" in this context as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  To determine whether the Commissioner's decision is supported by substantial evidence, the Court must "carefully scrutinize the entire record." Davis v. Heckler, 566 F. Supp. 1193, 1195 (D.D.C. 1983).  The Court may not reweigh the evidence and "replace the [Commissioner's] judgment regarding the weight and validity of the evidence with its own." Davis, 566 F. Supp. at 1195.  "[B]ecause the broad purposes of the Social Security Act require a liberal construction in favor of disability, the Court must view the evidence in the light most favorable to the claimant.  This way, the Court can give effect to the remedial purposes of the Social Security Act." Davis v. Shalala, 862 F. Supp. 1, 4 (D.D.C. 1994) (internal citations omitted).

The Social Security Act defines disability as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A).  The inability to engage in substantial gainful activity includes the

inability to perform the claimant's previous work or other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Claims for Social Security disability insurance benefits are evaluated using a five-step process. A claimant may be found to have no disability at any one of the sequential steps. The claimant must prove (1) that he is not presently engaged in substantial gainful work, (2) that he has a severe "impairment," and either (3) that he suffers for more than twelve months from one or more listed impairments, [1] or (4) that he is incapable of performing past relevant work.[2] 20 C.F.R. §§ 404.1520(b)-(e), 416.920(b)-(e). If the claimant prevails on the first four steps, the fifth step shifts the burden to the Commissioner to make a finding of no disability only if the commissioner proves that the claimant, based upon his age, education, work experience and residual functional capacity, is capable of performing other gainful work. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Simms v. Sullivan, 877 F.2d 1047, 1049 (D.C. Cir. 1989); Brown v. Bowen, 794 F.2d at 705-06.

## III. Discussion

### 1. The ALJ's Determination

In his review of plaintiff's application for Social Security disability benefits, Judge Michalski followed the five-step sequential process as outlined in 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(e). The ALJ determined in his initial August 3, 1998 hearing that plaintiff had met

---

[1] A listed impairment is an impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404, "which [is] considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant found to have a listed impairment will be considered disabled.

[2] Past relevant work is defined as work the claimant has done in the past. 20 C.F.R. §§ 404.1560(b), 416.960(b).

the first requirement, since he has not been gainfully employed since July 21, 1996. Neither party

disputed this, and accordingly, the ALJ correctly moved to the next step of the analysis.

The second step requires plaintiff to have a "severe impairment." C.F.R. §§ 404.1520(c),

416.920(c).  In reviewing the evidence, the ALJ found that plaintiff has a "bulging lumbosacral

disc and lubosacral degenerative arthritis, high blood pressure, and left ankle surgical residual

degenerative arthritis disorders, which impose significant restrictions on his ability to engage in

basic work-related function."  (AR at 25.)  As such, the ALJ determined that plaintiff's

impairments were "severe" within the meaning of step two of the analysis.

After finding that a claimant's impairments are considered "severe," the next stage in the

analysis requires finding that claimant's impairment conforms with either steps three or four of

the five-step process. Step three requires determining whether claimant suffers for more than

twelve months from one or more listed impairments.  If step three is not met, claimant must meet

step four which requires the claimant to be  incapable of performing past relevant work. 20

C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e).

In analyzing step three, the ALJ determined that plaintiff "does not have an impairment or

combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P,

Regulation No. 4." (AR at 30.)   Had the ALJ determined that plaintiff's impairments were equal

to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, plaintiff would have been deemed

disabled.  Such a determination was not made.

 In a review of plaintiff's opposition to defendant's motion for judgment of affirmance, it

is unclear whether plaintiff objects to this determination.  (See Pl.'s Mem. from February 28,

2004.)  Upon review of Appendix 1, however, this Court finds that the ALJ correctly determined

7

that plaintiff has not suffered for more than twelve months from one or more listed impairments contained in Appendix 1, Subpart P, Regulation No. 4.  Although plaintiff was diagnosed with certain impairments, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521 (1990).  Furthermore, "[f]or a claimant to qualify for benefits by showing that his...combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Id. at 531.

For an impairment to be equivalent to the listing under Section 1.05C of Subpart P, Appendix 1, the impairment must consist of both "(1) Pain, muscle spasm, and significant limitation of motion of the spine; and (2) Appropriate radicular distribution of significant motor loss with muscle weakness and sensory reflex loss." 20 C.F.R. § 404, Subpt. P, App. 1 § 105(c). While the record indicates that plaintiff has suffered pain, muscle spasm and some limitation of motion of the spine (see AR at 38), there is no medical evidence on record that plaintiff has suffered significant motor loss with muscle weakness ans sensory reflex loss.  Accordingly, the ALJ properly determined that step three was not met by plaintiff, and properly proceeded to step four of the analysis.

In analyzing step four, the ALJ determined that plaintiff's "capacity for the full range of light level work is diminished, because he can stand for only one hour at a time and a total of 3 hours total in an eight-hour day; cannot use his left leg for foot controls, is restricted to no more than occasionally bending, squatting, crawling and climbing; and, completely restricted from working at unprotected height." (Id. at 17.)   Nevertheless, the ALJ did not find that plaintiff's

impairment was severe enough to meet the requirements of step four, which requires a

determination that plaintiff is incapable of performing past relevant work.  Instead, the ALJ

determined that plaintiff's "past relevant jobs as security officer[3] did not require the performance

of work-related activities precluded by his residual functional capacity." (AR at 17.)

In making this decision, the ALJ followed the guidelines for past relevant work as set

forth in 20 C.F.R. § 404.1565.  In this analysis, past work experience "means skills and abilities

[the claimant has] acquired though work [the claimant has done] which shows the type of work

[the claimant] may be expected to do.20 C.F.R. § 404.1565(a).  As a general guideline, work

experience beyond the past fifteen years is not included in this analysis. Id.  In looking at

plaintiff's work experience over the recent years prior to his application for Social Security

disability benefits, the ALJ correctly determined that plaintiff was capable of performing some of

his past jobs, namely as a security guard.

In the fifteen years prior to plaintiff's application for benefits, he had been employed as a

security guard, helper, cashier, driver and a car salesman.  (AR at 93-94.)  In his job as a security

guard, plaintiff's responsibilities varied with each employer.  In his most recent job with

Forestville Corporation, plaintiff was required to walk on average of two hours a day, stand for

five hours a day and sit for one hour a day. (Id. at 96.)  Plaintiff was not required lift weights, and

never had to climb, though was required to crouch. (Id. at 97-98.)  In plaintiff's job as a security

---

[3] In the Administrative Record, plaintiff referred to his former positions as a "security
officer," though it is clear from the tasks required that plaintiff was actually a security guard.
According to the Dictionary of Occupation Titles 372.667-034, the job of a security guard
requires "light work...in excess of those for sedentary work."  Nevertheless, the ALJ determined
that plaintiff was able to meet the demands of the tasks required in his description of his prior job
as a security guard based on his residual functional capacity.

guard with another employer, Corporate Investigations Consultants, Inc., the ALJ noted that

plaintiff was not required to lift/carry any weight, and was only required to walk for one hour,

and sit seven hours of the workday.  Furthermore, in his position at Corporate Investigations

Consultants, Inc., plaintiff was never required to climb and was only required to bend or crouch

on occasion. (Id at 114-16; 16.)  Plaintiff's other positions as a security guard often required a

variety of sitting, standing and walking throughout the day with little of any lifting or crouching.

(See AR at 96-131.)

In determining that plaintiff had the requisite residual functions to continue to perform his

job as a security guard, the ALJ relied primarily upon the examination of Dr. DuBois, while also

taking plaintiff's subjective symptoms as well as the opinion of Dr. Jaspe C., an orthopedics and

traumatology surgeon, into consideration.  The ALJ then examined the physical residual

functional capacity assessment completed by a state agency medical consultant who examined

the evidence.

The record submitted by Dr. DuBois from an examination of plaintiff on June 9, 1997

(AR at 398) is much more extensive than the short report issued by Dr. Jaspe C. (AR at 413), and

accordingly the ALJ put a greater weight on the opinion of Dr. DuBois.  According to Dr.

DuBois, plaintiff initially complained of "left ankle pain if running any distance, jumping, going

up and down ladders, stair and hill, walking over 1/4 of a mile and in a cold environment." (Id. at

398).  After the examination, Dr. DuBois concluded that plaintiff had low back pain and limited

back motion relating to disc problems, but that plaintiff "will have minimal symptoms providing

he is not involve [sic] in strenous [sic] activities involving the back and left ankle." (Id. at 399.)

In the "Physical Capacities Evaluation" attached to Dr. DuBois' letter, Dr. DuBois recommended

that plaintiff can sit average six hours per day, stand four hours per day and walk three hours per day. (Id. at 400.)  Additionally, Dr. DuBois stated that plaintiff can lift and carry minimal weights as well as bend, squat, crawl and climb occasionally.  (Id.)

Dr. Jaspe C's opinion, however, states merely that plaintiff has "persistent muscle spam on back side, pain and limitations for go[ing] down and stand[ing] up, ... [and that] long periods of driv[ing] will produce more pain and more disability."  (Id. at 413.)  In taking Dr. Jaspe C.'s opinion into consideration, the ALJ noted that it would appear from the report that Dr. Jaspe C.'s opinion is that plaintiff is disabled.  (Id. at 15.)  However, the ALJ correctly noted that such an opinion is "not supported by objective findings or diagnostic tests and is inconsistent with the record as a whole." (Id.)

In analyzing the opinions of physicians in determining the disability of a claimant for Social Security benefits, substantial weight is accorded to the treating physician, since he or she has a greater familiarity with the claimant's condition. see Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987.)  "The treating physician's opinion regarding an impairment is usually 'binding on the fact-finder unless contradicted .'" Williams v. Shalala, 997 F.2d 1494, 1498 (D.C. Cir. 1993) (quoting Murdaugh v. Secretary, Dep't of Health & Human Servs., 837 F.2d 99, 101 (2d Cir. 1988)).  "[A]n ALJ who rejects the opinion of a treating physician must explain his reasons for doing so." Williams, 997 F.2d at 1498.  It appears from the record that Dr. Jaspe C. was plaintiff's treating physician.  In discounting Dr. Jaspe C.'s opinion, the ALJ thoroughly explained his reasons for doing so, thus meeting the requirements as set forth in Williams. Similarly, in Williams, the D.C. Circuit affirmed the decision of the District Court and the ALJ which discounted the conclusion of claimant's treating physician that claimant was disabled in favor of the opinion of contradictory independent evaluations. See id.

Plaintiff contends that defendant "erred by failing to seek additional and any new evidence from the agency's 'matching (computer) program' with other agencies within the federal government." (Pl.'s. Mem. from February 28, 2004 at 24.)  Plaintiff further contends that "information on Payne's difficulties..., shows that another agency (the Veterans Administration) within the Federal Government, had the required information needed by the commissioner, social security administration to find or prove that Payne qualified for benefits paid by the Federal Government under a disability program." (Id. at 24-25.)  In a review of the records from the Veterans Administration, however, there is nothing to indicate that the ALJ failed to take additional information in support of plaintiff's disability into consideration.  For example, in one of the medical records from the Veterans Administration, plaintiff complained of "chronic back pain with prolonged sitting," but it is later noted that plaintiff "ambulates, exercises at [the] gym, [and] lifts weights." (AR at 378.)  In another medical record from the Department of Veterans Affairs dated August 20, 1992, upon plaintiff's discharge there where no restrictions placed upon plaintiff's physical activity limitations. (AR at 396.)

In light of the Administrative Record, the statements by evaluating and treating physicians, as well as medical records from the Veterans Administration, plaintiff's subjective symptoms and new evidence submitted by plaintiff (see Pl.'s Mem. from February 28, 2004, Ex.), there is nothing to indicate that the ALJ erred in determining that plaintiff is capable of performing his past relevant work as a security guard.

## 2. Plaintiff's Representation

In his application for Social Security disability benefits, through his requests for reconsideration, hearings on reconsideration, appeals and this instant action Mr. Payne has been a pro se plaintiff.  In his opposition, plaintiff argues that "he was not represented by legal counsel at any level of the Social Security Administration review, had lack[ed] the financial resources to

return to the U.S. for the ALJ's hearing in his case...," and as a result, this should be taken into consideration. (Pl.'s Mem. from February 28, 2004 at 37.)  In reviewing the record, however, plaintiff waived his right to representation at all stages. (See AR at 18, 43, 45, 46)  Plaintiff was aware of his right for a personal appearance before the ALJ, but waived it because of personal financial restrictions in traveling. (Id. at 46.)  There is nothing in the record to indicate that the SSA or the ALJ failed to evaluate all of the evidence or erred in following the rule of law because of plaintiff's *pro se* status.    Furthermore, this Court has taken pains to advise the *pro se* plaintiff of the requisite procedural requirements in an appeal to the District Court.  This included advising plaintiff of the consequences of failing to respond to a motion to dismiss, and the significance of factual allegations in a motion for summary judgment. (See Ct. Order from November 20, 2003.)

        Hearings on disability benefits before an administrative law judge are informal in nature, and should be understandable for those who are not attorneys. See Richardson v. Perales, 402 U.S. 389, 400 (1971).  "Thus it is clear that counsel is not a requirement of proceedings before an Administrative Law Judge...and that it is only in those cases where there is a showing of prejudice that the question of lack of counsel may warrant a finding of unfairness." Roe v. Califano, 433 F.Supp. 1157, 1165 (D.C. Md. 1977).  Since there is nothing to indicate a showing of prejudice, plaintiff's lack of representation will not preclude affirmation of the ALJ's decision.

## IV. Conclusion

        The Administrative Law Judge properly found that plaintiff was not disabled at step four of the five-step analysis, and accordingly was not entitled to Social Security disability benefits. For these reasons, defendant's motion for affirmance, which will be treated as a motion for summary judgment [10] will be GRANTED.  Additionally, plaintiff's motion for leave to file

excess pages [15], motions for extension of time to file [17, 19, 20, 21, 22, 23, 24, 28] will be

GRANTED *nunc pro tunc.*  Plaintiff's motion to reverse the transcript of the entire record [16]

and plaintiff's motion to strike [16] will be DENIED.  Furthermore, plaintiff's motion to strike

answer to complaint [27] will be DENIED, and plaintiff's motion [29] to order defendant to

serve a copy of defendant's motion for relief re supplemental memorandum will be DENIED as

moot.


A separate Order shall issue this date dismissing this case with prejudice.


Signed by Royce C. Lamberth, United States District Judge, August 25, 2005.